Yvonne SANDERS, Plaintiff–Appellant,

v.

COMMISSIONER OF SOCIAL
SECURITY, Defendant–
Appellee.

No. 00–1979.

United States Court of Appeals,
Sixth Circuit.

Sept. 25, 2001.

Before NORRIS and BATCHELDER,
Circuit Judges; GWIN, District Judge.*

---

* The Honorable James S. Gwin, United States
District Judge for the Northern District of
Ohio, sitting by designation.

Yvonne Sanders appeals a district court judgment that affirmed the Commissioner's denial of her application for social security disability and supplemental security income benefits. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed in this case. Fed. R.App. P. 34(a).

Sanders alleged that she had an enzyme deficiency that caused depleted energy and muscle cramping. An Administrative Law Judge ("ALJ") found that she had a "severe metabolic myopathy with partial phosphofructokinase deficiency" which precluded the performance of her past work, even though her condition was not equal to any of the impairments that are listed in Appendix 1 of the regulations. These findings are not in dispute. However, the ALJ also found that Sanders was not disabled because a limited but significant number of sedentary jobs were still available to her. This opinion became the final decision of the Commissioner on September 8, 1999, when the Appeals Council declined further review. The district court subsequently entered judgment in favor of the Commissioner on August 11, 2000. It is from this judgment that Sanders now appeals.

This court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Accordingly, this court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.

*Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997) (citations and internal quotation marks omitted). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if we might have decided differently based on substantial evidence to the contrary. *See Cutlip v. Secretary of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir.1994).

■ Since Sanders could not perform her past work, the burden shifted to the Commissioner to show that a significant number of jobs were still available to her. *See Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.1999). Thus, the ALJ posed the following questions to a vocational expert:

Q Assume . . . that we have basically the same person, age, education and work experience. And assume further that I find that this person can do sedentary work; however she needs a job which does not require any repetitive motion involving any muscle group. She can sit for no more than one hour at a time and stand for no more than 15 minutes. Needing a recovery time of about 15 minutes and with lifting of less than five pounds. If you assume this, are there any unskilled jobs which our hypothetical claimant would be vocationally qualified to perform?

. . . .

And if . . . our hypothetical claimant does experience pain to a degree which would make her moderately limited in the ability to maintain attention and concentration for extended periods of time, . . . but not to exclude . . . simple, unskilled jobs, what impact would that have on your response to my question?

■ Sanders now argues that these questions were inadequate because the ALJ did not afford sufficient deference to the opinion of her treating physician, Dr. Simpson. Such an opinion is afforded great weight if it is consistent with the evidence and supported by sufficient clinical findings. *Cutlip,* 25 F.3d at 287. However, an ALJ is not bound by a treat-

ing physician's opinion if there is substantial medical evidence to the contrary. *Id.*

Dr. Simpson drafted a letter in July of 1997, that described Simpson's condition as follows:

Her current condition includes severe disability with inability to perform even the simplest activity without severe muscle cramping. She is markedly impaired as far as walking even a short distance, climbing stairs and doing any kind of lifting.... Restrictions are that of no heavy lifting over ten pounds, limited physical activity, including walking to tolerance, marked restriction of repetitive activity with the hands, no twisting, bending.... I do consider the patient totally disabled.

■ We note that the ALJ's hypothetical questions included several of the restrictions that Dr. Simpson described. For instance, the ALJ limited the vocational expert to jobs that involved the lifting requirements of sedentary work and precluded any work that involved repetitive motion. Sanders does not argue that any other specific limitation should have been included. Instead, she argues that the ALJ was bound by Dr. Simpson's conclusion that she was totally disabled.

It appears that Dr. Simpson's diagnosis of a phosphofructokinase deficiency was consistent with a myoglobinuria profile that was performed in November 1995. However, there is no indication that this diagnosis is inevitably linked to total disability. In fact, when referring to the myoglobinuria profile, Dr. Simpson also opined that Sanders might benefit from dietary changes. He also noted that her most recent biopsy had been within normal limits. Thus, the ALJ was not bound by Dr. Simpson's conclusion that Sanders was totally disabled, as this conclusion was not fully "supported by detailed, clinical, diagnostic evidence." *Walters,* 127 F.3d at 530.

Moreover, Dr. Simpson's conclusion regarding total disability is not consistent with the reports of several other physicians. In 1994, an examining physician, Dr. Ahmad, reported normal tone, bulk, and power in all major muscle groups. In 1995, another physician advised Sanders that she was subject to "no limitation for exercise except to prevent dehydration and salt loss." In 1996, an examining consultant, Dr. Rojas, noted that a phosphofructokinase deficiency was extremely rare and that "the evidence presented so far in this case is inconclusive." Sanders's family physician, Dr. Odeh, examined her in February and July of 1997, noting on each occasion that she was "not in acute distress." Indeed, Dr. Odeh saw Sanders on numerous occasions between April 1996 and October 1997, and referred her to several specialists during that time. However, these reports rarely mention her muscular impairment. Under these circumstances, we conclude that the ALJ gave adequate deference to Dr. Simpson's opinion by finding that Sanders retained the ability to perform only a severely limited range of sedentary work. *See id.; Cutlip,* 25 F.3d at 287.

■ The assumptions in the ALJ's hypothetical questions were adequately supported by the medical record. In response, the vocational expert described 2,500 unskilled jobs in the regional economy that Sanders could still perform. It is undisputed that this response identified a significant number of jobs. *See Harmon,* 168 F.3d at 291–92. Hence, there was substantial evidence in the record to support the Commissioner's ultimate determination that Sanders was not disabled.

Accordingly, the district court's judgment is affirmed.